[Sac. No. 5084. In Bank.—July 21, 1939.]

M. D. BAKER, Appellant, v. N. M. GIBSON et al., Respondents.

Carter, Barrett, Finley & Carlton and Oliver J. Carter for Appellant.

Chenoweth & Leininger for Respondents.

THOMPSON, J., *pro tem.*—The plaintiff brought suit to terminate a lease and to recover possession of a placer mining claim and equipment in Shasta County. The first count sought to recover the right of possession of the property. The second cause of action was for two instalments of rent alleged to be due, amounting to $850. The answer conceded the termination of the lease and disclaimed the desire to retain possession of the property by the defendants. It denied that instalments of rent were due or owing to plaintiff. In a counterclaim the defendants asked for judgment for $266.88 necessarily expended by the defendants in repairing the machinery to render it suitable for the purpose for which it was leased.

The court adopted findings favorable to the defendants, determining the plaintiff wrongfully and unlawfully terminated the lease March 13, 1935, and that no instalments of rent were then due or owing to him. But title to the leased property was quieted in plaintiff by consent expressed in the pleadings. Judgment was rendered accordingly. From that judgment the plaintiff has appealed.

The cause involves chiefly a construction of the terms of the written lease which was executed January 2, 1935, material portions of which read as follows:

"This lease is made for the purpose of making an operating test on the Ringius and Heynen property hereinabove mentioned and described, for a period of thirty (30) operating days for the sum of Thirty-five ($35.00) Dollars per day

as rent, and it is hereby agreed that an operating day shall consist of a minimum of four (4) hours working with the shovel, and a maximum of one (1) day shall be considered twenty-four (24) hours working with the shovel aforesaid.

"And it is hereby further agreed that the commencement of the said thirty (30) days shall not be later than seven (7) days after the shovel above mentioned is returned to the property by the said lessor herein. The said shovel now being off the property for the purpose of widening a ditch of the Happy Valley Water Company.

"The said lessees hereby agree to pay the said sum of Thirty-five ($35.00) Dollars per day as rent in three installments as follows:

"The sum of Two Hundred ($200.00) Dollars shall be paid upon the execution and delivery of this assignment of lease and option; the sum of Two Hundred ($200.00) Dollars shall be paid when the operating test begins which shall not be later than seven (7) days after the shovel is returned to the above mentioned property, as hereinabove mentioned, the remaining Six Hundred Fifty ($650.00) Dollars shall be paid within ten (10) days after the operating test begins.

. . . . . . . . . . . .

"It is hereby further agreed by and between said lessor and said lessees that all improvements, repairs, together with work, labor, supplies, water rents, royalties and all other operating expenses during the term of this test shall be at the expense of the said lessees.

. . . . . . . . . .

"The said lessees are hereby excused from the performance of any term, condition, covenant, or payment, when the performance of the same is prevented by the acts of God, strikes, war, insurrections, or the elements beyond the control of man.

. . . . . . . . . . .

"In the event the said lessees . . . shall at any time be in default in making any of the payments herein specified to be made, then this assignment of lease and option shall terminate, . . . provided that before such forfeiture . . . the said lessor shall notify the said lessees, or their assigns, in writing, that they are in default *and specify in what particulars.*"

The object of the lease was to enable the defendants to prospect for minerals. The most important part of the equipment was a power shovel, without which the dredging project could not be performed. The lease was executed "for a pe-

riod of thirty (30) *operating days"*, to begin seven days after the shovel was delivered at the claim. It was then being used on other property. The lease did not contemplate a continuous use of the machinery. It specifically provides that the lessee is relieved of its terms by conditions "beyond the control of man". The consideration for the lease was $35 for each operating day. The lease provides that "an operating day shall consist of a minimum of four (4) hours working *with the shovel,* and a maximum of one (1) day shall be considered twenty-four (24) hours *working with the shovel"*. Payments of the total sum of $1,050 became due in three instalments as follows: $200 upon the execution of the lease, which was paid; $200 "when the operating test begins", and the remaining $650 "within ten days after the operating test begins."

The shovel was not delivered until February 17th. It was then out of repair and unfit for use, as the plaintiff well knew. The center gudgeon sleeve, shaft and bushings were broken. Although the plaintiff's attention was called to that fact, he failed to repair the machine and left for Oregon before it was delivered. The defendants did not know where to address him during his absence. They were therefore unable to notify him of the cost of such necessary repairs as provided by section 1957 of the Civil Code. They, however, promptly ordered the required parts to be shipped to them at a cost of $216.88, and had them installed at a further reasonable charge of $50. The court found that the defendants necessarily incurred an expense of $266.88 in repairing the shovel so as to enable them to use it for dredging purposes. That finding is supported by the evidence.

The evidence is uncontradicted that the first day the defendants were able to use the machine was February 25th. They then had further trouble with the machinery which required tuning, adjusting and aligning. They were unable to continue operations until March 3d. On that day the pinion of the chain-drive to the screen broke and they were compelled to remove it and take it to town for repairs. Before they could resume operations a heavy storm occurred and the Happy Valley ditch, upon which they relied for water to wash tailings, broke, entirely shutting off their supply and preventing them from operating again until March 11th. They then continued dredging for four days, when they were notified by the plaintiff that their lease was terminated for

failure to pay the second instalment of rent. The machinery was actually operated only five days during the time they were permitted to use it. There is no evidence they secured any returns from their enterprise.

February 26th, the day after the first ineffectual effort to operate the shovel, the plaintiff visited the property and demanded payment of the second instalment of $200. He was then told of the necessary expense of $266.88 incurred by the defendants to place the shovel in workable condition. The receipted bill of $216.88 was then offered to him in full settlement of the second instalment, which was refused. March 13th, the plaintiff served the defendants with written notice of default of the payment of the second instalment only, and of his intention to terminate the lease on that account. No further work was performed on the premises after March 14th. The defendants abandoned the enterprise on account of the notice terminating the lease. This suit was then commenced.

The court found that the shovel was delivered to the defendants in a defective condition and unfit to perform the services for which it was intended, as the plaintiff knew; that the plaintiff was out of the State of California and the defendants were unable to notify him of the cost of repairing the shovel, but that they expended in necessarily repairing the machine to place it in workable condition, the sum of $266.88, which the plaintiff refused to pay; that the first day upon which the defendants were able to operate the machine was February 25th; that on account of defective and broken machinery and the bursting, due to unusual storms, of the Happy Valley ditch, upon which source they relied for water to operate their washing machine, they were unable to resume operations, with the exception of an ineffectual effort to do so on March 3d; that plaintiff wrongfully and unlawfully terminated the lease by serving notice on the defendants March 13th; that the payment of $266.88 for repairing the shovel more than offset the second instalment of $200, which was not due until seven days after February 25th when the shovel was in workable condition, and that defendants were not in default of any instalment of rent. Judgment was rendered in favor of the defendants for the sum of $266.88 upon their counterclaim.

■ The trial court correctly determined that the defendants were entitled to credit for the sum of $266.88 which they necessarily expended in repairing the shovel to render it suitable for the service for which it was rented. The lease should be construed in the light of sections 1955–1957 of the Civil Code, which provide that a lessor of personal property is required to "put it into a condition fit for the purpose for which he lets it", and to deliver it to the lessee suitable for operation; that the lessee shall bear all expenses *"during its use by him"*; and that if the lessor fails to deliver the property in a suitable condition for use, the lessee "may expend any reasonable amount necessary to make good the latter's default". ■ The last-cited section provides that notice of such necessary expense must be imparted to the lessor only when it "can conveniently be given".

In the present case the plaintiff was previously notified of the defect in the machine and failed to repair it. He left the State of California the day before it was delivered. The defendants did not have his address and were therefore unable to notify him of the cost of the necessary repairs. It became necessary to make the repairs to place the shovel in condition to be used for the purpose for which it was leased. The defendants were authorized under such circumstances to expend a reasonable amount in repairing the machine. It is not contended the sum expended is excessive.

■ We are of the opinion the trial court correctly construed the lease to be "for a period of thirty *operating days*", as distinguished from calendar days. The contract defines an "operating day" as not less than four, nor more than twenty-four hours "working with the shovel". The lease specifies that the lessees shall pay for each "operating day" the sum of $35 as rental for the property, aggregating $1,050. That rental was to be paid in the following instalments, to wit, $200 upon the execution of the contract, which was paid; $200 "when the operating test begins which shall not be later than seven (7) days after the shovel is returned to the above mentioned property". This last-quoted provision should be construed to mean the second instalment was due not later than seven days after the shovel was delivered to the lessees *in proper condition to be used* for the purpose for which it was rented. It was ready for use February 25th. It may be said the operating test began on that day.

At least the court so found. ■ Since the second instalment was due seven days after the machine was delivered ready for use, it became due March 3d. But the defendants were not then in default for failure to pay plaintiff that sum because they had previously expended for his benefit in repairing his shovel the sum of $266.88. They offered him the receipted bill for $216.88 in payment of that second instalment, which he refused. They were therefore not in default, and the court correctly so found, but failed to credit the plaintiff upon the defendants' counterclaim with the amount of that second instalment.

■ The court correctly found that the $650 instalment was not due, for the reason that the time for its payment was extended under the terms of the contract by an occurrence "beyond the control of man" which prevented them from operating the prospecting enterprise. The contract specifically provides that "said lessees are hereby excused from the performance of any term, . . . or *payment,* when the performance of the same is prevented by the acts of God, . . . or the elements beyond the control of man". Mr. Magee testified that:

"On March 3rd we operated again . . . until we broke the pinion that drove the chain drive to the screen of our washing machine. . . . Then we had to stop, took off that pinion, brought it to town, had a new one cast, and took it back. In the meanwhile the Happy Valley ditch was broken during that heavy rain, right near a box up there, when all the water to Igo was cut off. . . . There wasn't any water to work with. . . . Q. When was the next operating made? A. . . . March 11th."

Clearly the defendants had no control over the storm which broke the ditch upon which they were dependent for their supply of water to operate their washing machine. That calamity over which they had no control had the effect, under the express provisions of the contract, to extend the time for paying the third instalment of $650. ■ It was not due when the plaintiff served notice of the termination of the lease. Assuming that the ten-day period for paying that last instalment began to run the day after the operations commenced on February 25th, only six days elapsed before the ditch broke and the water failed. The defendants were not again able to resume operations until March 11th, after which date they were entitled to four days more in which

to pay that last instalment, which would expire March 14th. In the meantime notice of the termination of the lease was served on March 13th. The $650 payment was not then due. On account of that notice the defendants ceased working on the following day and abandoned the enterprise. They did not oppose the plaintiff taking immediate possession of the mine and equipment.

Moreover, the plaintiff wrongfully terminated the lease for the alleged default of payment of the second instalment of $200, for the reason that they had previously expended in his behalf more than that sum in repairing his shovel to place it in workable condition. They were not then in default, as we have previously stated. The plaintiff's notice of alleged default contained only the specification of failure to pay that second instalment. The contract requires the notice to contain the "specific particulars" in which it is claimed the contract has been breached. That notice did not specify the failure to pay the last $650 instalment as ground for termination of the lease. Evidently the plaintiff did not then consider the defendants in default in that regard.

The lease contemplated that the defendants would be permitted to prospect the claim for mineral for a period of *thirty operating days with the shovel* at $35 per working day, aggregating the sum of $1,050. They actually operated only five days without any proved profit. To permit the plaintiff to terminate the lease under such circumstances and recover the final instalment of rent after giving notice of the termination of the lease before the payment was due, would result in unjust enrichment on his part in spite of his own wrong. Such a construction of the contract is not reasonable.

The plaintiff is entitled to credit on the defendants' counterclaim for the amount of the second instalment of $200, which the court failed to allow him. That credit leaves the defendants entitled to judgment for $66.88 and costs taxed at $13.75. The judgment is modified accordingly.

As so modified, the judgment is affirmed, neither party to recover costs on appeal.

Shenk, J., Curtis, J., Langdon, J., Houser, J., and Edmonds, J., concurred.

Rehearing denied.